UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHAH MAHMOOD MIRZADA,<br>A-Number: 249-374-607 | ) <br> ) | Case No.: 1:26-cv-00425-JLT-FJS (HC) |
| Petitioner, | ) <br> ) | FINDINGS AND RECOMMENDATION TO |
| v. | ) <br> ) | GRANT PETITION FOR WRIT OF HABEAS<br>CORPUS |
| WARDEN, CALIFORNIA CITY ICE<br>FACILITY, et al., | ) <br> ) | [14-DAY DEADLINE] |
| Respondents. | ) <br> ) <br> ) <br> ) | |

Petitioner is a pro se immigration detainee petitioning for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on January 20, 2026. (Doc. 1.)  On February 20, 2026, Respondent filed a combined motion to dismiss and response to the petition. (Doc. 8.) Petitioner did not file a traverse.

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE").  He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment.  He claims he should be immediately

1

released or, alternatively, provided a bond hearing before an immigration judge where the government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the court recommends the petition be granted in part and Respondents be directed to provide Petitioner with a bond hearing before an immigration judge.

I.     BACKGROUND

Petitioner is a native and citizen of Afghanistan who entered the United States under the CBP One program on March 17, 2024. (ECF No. 8-1 at 2.)  He was subsequently placed in ICE custody and charged with removability under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) for lack of valid entry documents. (*Id*., at 6.)

In June 2024, Petitioner appeared before an immigration judge and conceded removability. (*Id*. at 6.) In October 2024, he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("Convention"). (*Id*., at 7.) In September 2025, the immigration judge issued a decision denying Petitioner's application for asylum and withholding of removal but granting his request for deferral of removal under the Convention. (ECF No. 8-1 at 6-21.) Petitioner appealed the decision to the Board of Immigration Appeals ("Board"), and the appeal remains pending. (*Id*., at 24.)

Petitioner has remained in ICE custody since March 17, 2024, a period of over two years.

II.     DISCUSSION

A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

B.  Mandatory Detention under 8 U.S.C. § 1225(b)

The parties acknowledge that Petitioner has been in continuous detention since March 17, 2024. Petitioner complains that the two-year period has become prolonged and indefinite and argues that he should be given a bond hearing or, in the alternative, released from custody.

1.    *Statutory Background*

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1).  Such an applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was charged with removability for lacking valid entry documents.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." *Id.* § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with the officer's determination, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." *Id.* §§ 1003.42(c), (d)(1); see *id.* § 1225(b)(1)(B)(iii)(III). In this case, Petitioner made a claim for asylum. The immigration judge denied the applications for asylum and withholding but granted deferral of removal under the Convention. The matter is currently pending appeal with the Board.

Regardless of whether applicants receive full or expedited review, they are not entitled to immediate release. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 111 (2020). Instead, they

"shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id*. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. *Id*. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Nonetheless, an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id*. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Petitioner was not released pursuant to § 1182(d)(5)(A).

2.    <em><u>Due Process in Prolonged Immigration Detention</u></em>

Petitioner contends he has been unreasonably detained for two years without a bond hearing in violation of his due process rights.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community.

The government's authority to detain an alien under section 1225(b) applies during the administrative and judicial phases of removal proceedings. *Cf. Avilez v. Garland*, 69 F.4th 525, 535 (so holding in the context of mandatory detention under section 1226(c)). The Supreme Court held that section 1225(b)(1) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances." *Jennings*, 138 S. Ct. 830, 844 (2018) (distinguishing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Petitioner does not assert that those "limited circumstances" apply here. Section 1225(b)(1) cannot "reasonably be read to limit detention to six months." *Id*. See *Avilez*, 69 F.4th at 534-35 (holding that mandatory detention under section 1226(c) "applies during the administrative and judicial phases of removal proceedings"). Although section 1225(b)(1) survived a facial constitutional challenge, the Supreme Court remanded for consideration of constitutional due process arguments. *Jennings*, 138 S. Ct. at 851.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment

4

entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), although "Congress regularly makes rules [in the immigration context] that would be unacceptable if applied to citizens." *Denmore*, 538 U.S. at 521. The Supreme Court held that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Id.* at 531; *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). That said, "due process is flexible . . . and it calls for such procedural protections as the particular situation demands." *Jennings*, 138 S. Ct. at 852 (quotations omitted).

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. The Ninth Circuit noted that many courts have applied the *Mathews*[1] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims"). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). Still, many district courts in the Ninth Circuit, including this court, used the *Mathews* test in evaluating whether due process entitles a petitioner to a bond hearing when subjected to prolonged detention. *See, e.g., A.E. v. Andrews*, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025); *Jensen v. Garland*, No. 21-cv-1195-CAS (AFM), 2023 WL 3246522, at *4 (C.D. Cal. 2023); *Galdillo v. U.S. Dep't of Homeland Sec.,* No. EDCV 21-724 JGB (KKx), 2021 WL 4839502, at *3 (C.D. Cal. 2021); *Jimenez v. Wolf*, No. 19-cv-7996-NC, 2020 WL 510347, at *3 (N.D. Cal. 2020); *Riego v. Scott*, No. 24-cv-1162-SKO (HC), 2025 WL 660535 (E.D. Cal. 2025). And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a)

---

[1] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

detention. 53 F.4th at 1206-07. Thus, the court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a bond hearing in a section 1225(b) detention.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner's two-year detention qualifies as "prolonged" in a general sense. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011) (holding that once "the alien has been detained for approximately six months," "continuing detention becomes prolonged"), *cited and quoted in Rodriguez Diaz*, 53 F.4th at 1207. A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh*, 638 F.3d at 1208.

In *Rodriguez Diaz*, the Ninth Circuit held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, "[t]he process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. *Rodriguez Diaz* further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." 53 F.4th at 1213. In this case, the existence of a non-final order of removal from the United States tends to diminish Petitioner's private interest. *Cf. Rodrigeuz Diaz*, 53 F.4th at 1208. So too does the fact that Petitioner has pursued an appeal of the immigration judge's order of removal. *See id.* at 1207-08. On the other hand, Petitioner has not yet received a bond hearing. He has received process but only in the context of his applications for asylum, withholding of removal, and protection under the Convention. It appears there has been no inquiry into his ongoing prolonged detention and whether he poses a risk of danger to the public or a flight risk. Balancing these competing considerations, the first factor weighs in Petitioner's favor.

In the second factor, the court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3.  The Ninth Circuit held in *Rodriguez Diaz* that a section 1226(a) detainee who had received an earlier bond hearing before an immigration judge could not tip this second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. Here, however, Petitioner has not received the benefit of a bond hearing. And the right to seek an additional bond hearing under section 1226(a), *Rodriguez Diaz*, 53 F.4th at 1209 (citing 8 C.R.F. § 1003.19(e)), does not apply to Petitioner's detention under section 1225(b). Under the mandatory detention provisions of section 1225(b), Petitioner is not entitled to a bond hearing, and there is no indication that the government has ascertained or will ascertain in the future whether Petitioner presents a risk of flight or danger to the public and, if so, whether alternatives to detention are available. Thus, the probable value of additional procedural safeguards— e.g., a bond hearing—is high. Given that Petitioner has been held without a bond hearing for over two years, and it is not clear when detention will end, the risk of erroneous deprivation weighs in favor of granting a bond hearing.

In the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Dias*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases).  Here, Respondents' asserted interest hinges, in part, on untested assumptions about Petitioner's risk of flight or dangerousness. And the court is focused on Petitioner's request for a bond hearing before an immigration judge, not the alternative request for unqualified

release. Providing a bond hearing would not undercut the governmental interest in accomplishing removal; a bond hearing would provide a forum for the parties to advocate as to *whether* this Petitioner represents a flight risk or danger to the community. Given "the minimal cost of conducting a bond hearing, and the ability of the [immigration judge] to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." *Zagal-Alcaraz*, 2020 WL 1862254, *7 (quoting *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The court concludes that the imposition of a bond hearing on Petitioner's continued detention does not undermine the weighty and substantial interests the government pursues here.

On balance, the *Mathews* factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community.  The court thus finds that Petitioner's prolonged detention violates his Fifth Amendment due process rights, and a bond hearing should be provided.

C.  Burden of Proof at Bond Hearing

Petitioner contends that the government should bear the burden of proof to justify detention by clear and convincing evidence. Respondents contend that Petitioner should bear that burden. As other courts have also concluded, the undersigned recommends that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of *Singh*, 638 F.3d at 1208. *See Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the [Board] properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under section 1226(c)). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

III.    RECOMMENDATION

For the foregoing reasons, the court hereby RECOMMENDS that Respondents' motion to dismiss be DENIED, the petition for writ of habeas corpus be GRANTED in part, and Respondents be

DIRECTED to provide Petitioner with a bond hearing within fourteen (14) days before an immigration judge wherein the government must demonstrate by clear and convincing evidence, in accordance with the requirements of *Singh*, 638 F.3d at 1208, that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within <u>fourteen (14) days</u> after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." <u>Objections, if any, shall not exceed fifteen (15) pages or include exhibits.</u> Exhibits may be referenced by document and page number if already in the record before the court. Any pages filed in excess of the 15-page limit may not be considered. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated:    **June 26, 2026**

_____
UNITED STATES MAGISTRATE JUDGE